Denton v. Groves.

---

WINFIELD DENTON AND OLIVER DENTON, *Partners as Denton Brothers*, v. W. H. GROVES.

**No. 607.** (61 Pac. 815.)

1. PRACTICE, *Courts of Appeals—Findings of Jury—Motion to Set Aside.* In order to challenge, in this court, the insufficiency of the evidence to support the findings of fact by a jury, the party aggrieved should file his motion in the trial court to set such find-ings aside, and obtain a ruling thereon.

2. ——— *Questions for Jury — Review.* The question as to whether or not a grain deal is a gambling contract is one to be de-termined by the jury, under proper instructions; and where it is submitted to and determined by a jury, and their finding is sup-ported by some evidence, and it is approved by the trial court, it will not be disturbed.

Error from Leavenworth district court; LOUIS A. MYERS, judge. Opinion filed July 11, 1900. Affirmed.

*William A. Porter*, for plaintiffs in error.

*J. H. Gillpatrick*, for defendant in error.

The opinion of the court was delivered by

McELROY, J. : The plaintiffs in error, Denton Broth-ers, in 1891 were partners engaged in the grain and elevator business at Leavenworth; the defendant in error, Groves, was superintendent of the linseed oil

mills, located in that city. During the months of May and June, Denton Brothers were selling on their own account and for account of their customers, on the board of trade in Chicago, large amounts of rye for September, 1891, delivery. The amount thus sold aggregated something over 100,000 bushels, including 5000 bushels for account of the defendant Groves. The rye was sold at 61½ cents per bushel. Within a short time there was an advance in the price until, about the middle of August, when the deal was closed, it was selling at 93 cents. The defendant Groves put no money into the venture; the margins and losses, amounting to $1581.25, were paid by the plaintiffs and charged to the account of the defendant.

Denton Brothers, as plaintiffs, brought suit on the account for the recovery of the amount due, with interest. The defendant answered, denying that any rye was actually sold or purchased, or intended to be sold or purchased for delivery, and alleged that the transaction out of which the alleged indebtedness arose was simply a deal in options, a wager upon the future price of rye, and that the defendant was not legally liable to the plaintiffs thereon.

A trial was had before the court and a jury, which resulted in a verdict for the defendant and judgment against plaintiffs for costs. The plaintiffs, as plaintiffs in error, prepared their case-made and present the record to this court for review, and allege numerous errors in the proceedings of the trial court, which we will examine.

I. The plaintiffs in error complain that the defendant was permitted to badger a witness and carry the cross-examination far beyond the lawful limit. The plaintiffs in error cite two instances in proof of this contention. We have examined the record in

Denton v. Groves.

this regard, and find that plaintiffs in error neither objected nor excepted to the manner or extent of the cross-examination.   However, it is not apparent that the defendant abused his privileges in the cross-examination of witnesses.   The witness appeared from some cause to understand with difficulty the exact question asked.

II.   That the court erred in refusing certain instructions requested.

"(4) If either of the parties intended an actual delivery of the property, it is not void as a gambling contract, even though it resulted in settling the differences of the prices without the delivery of the grain.

"(5) The jury are instructed that the burden of showing the illegality of the contract is on the defendant."

These instructions were refused.   The court, however, instructed the jury as follows :

"(2) One has a right to sell and agree to deliver at some future time property which he does not own at the time of sale, but which he expects to go into the market and buy ; but an agreement for a sale and future delivery of grain is a gambling contract and illegal if it is the understanding or intention of both parties at the time that there is to be no actual sale, purchase, receipt or delivery of the grain at the time fixed for the delivery thereof, but only that the parties shall then settle and the purchaser receive or pay the 'difference' between the agreed price and the market price, according as the market price is less or greater than the agreed price ; and if the jury believe from the evidence in this case that such was the intention of these parties the plaintiffs cannot recover in this case."

And at plaintiffs' request the court further instructed the jury as follows :

"The illegality of a contract is never presumed, but must always be proven.   And in this case if you

find from a preponderance of the evidence that the plaintiffs have proven a valid contract with the defendant, then the burden of showing that such contract is illegal or void as against public policy devolves upon the defendant.''

. The court committed no error in refusing the instructions. The instructions given very fairly present the question sought to be presented in the instructions refused.

III. That the special findings are not supported by the evidence. The court, at plaintiffs' request, submitted certain special findings, which were answered by the jury as follows:

''Ques. 1. Did Denton Bros. buy the actual grain in Chicago and fill their contract of 105,000 bushels of rye? Ans. No.

''Q. 2. Was it the intention of Denton Bros. to furnish the actual rye, sold for Groves, at the time the sale was made, on June 26, 1891? A. No.

''Q. 3. Did Groves tell Denton, on June 26, 1891, the day that the sale was made, that he did not intend to deliver the rye? A. No; not according to evidence.''

The special findings are supported by the evidence; besides, there was no motion to set them aside, but on the contrary the plaintiffs accepted the special findings and moved for judgment thereon. If plaintiffs were not satisfied with the special findings they should have made a motion to set them aside.

IV. That the verdict is not sustained by the evidence. The plaintiffs in error during the months of May and June, 1891, sold for September delivery, on the board of trade at Chicago, about 105,000 bushels of rye, 5000 bushels of which was sold on account for the defendant Groves. The rye was sold at 61½ cents per bushel. Within a short time there was an ad-

vance in the price until, on the 14th of August, it sold at 93 cents, at which time the venture was closed out at a loss. The defendant Groves put no money into the transaction; the margins and losses were all paid by Denton Brothers and charged to the account of the defendant. The plaintiffs in error contend that at the time the rye was sold they intended to deliver the same in September, according to contract; that afterward they were unable to secure rye in the country with which to fill the contract, and that, in consequence of the lack of necessary money to advance for margins, they were compelled to go on the open market in Chicago and buy the rye with which to fill the contract, and that this was done. On the other hand the defendant contended, and still contends, that he had no rye to deliver; that he never intended to deliver any grain; that the intention was to settle the differences, whether it be a loss or profit; and that this was all well understood by Denton Brothers and all other parties connected with the transaction.

It is not very clear from the plaintiffs' version of the contract whether there was a real contract for the sale of rye between any of the parties. The plaintiffs in their brief say : "Denton Brothers presented this statement of loss to Groves on August 15, 1891." In the account as kept by Denton Brothers upon their books they did not charge Groves in the first instance with the amount of the purchase of the rye, but left the matter open until in August, when they charged him with the loss on the transaction. If it was a real sale and purchase of grain, it would be reasonable to suppose that they would charge him with the amount of rye at the agreed price. It is not clear from the plaintiffs' description of the transaction and the

method of executing it that any rye was ever purchased, sold, delivered, or intended to be delivered or received. A gambling contract is tested by the intention of the parties. In this case the Dentons say that the intention was to deliver the actual rye. Some of plaintiffs' witnesses say actual rye was delivered, but when they describe the transaction it is not clear that they ever intended to or did deliver any rye.

An examination of the entire evidence satisfies us that the transaction was not a real bargain and sale of rye, for future delivery, but that it was a gambling contract, and that all the parties connected with it contemplated merely the settlement of differences in price, whether lower or higher.

The motion for a new trial was properly overruled. The judgment is affirmed.